Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| OLU OMODUNBI, <br><br> Plaintiff, <br><br> v. <br><br> GORDIN & BERGER, P.C., *et al.*, <br><br> Defendants. | Civil Action No. 17-7553 (ES) (JSA) <br><br> OPINION |

**SALAS, DISTRICT JUDGE**

Before the Court is Defendants Gordin & Berger, P.C., Edward Berger, and Daniel Berger's motion to dismiss Plaintiff Olu Omodunbi's Second Amended Complaint (D.E. No. 60 ("SAC")) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.E. No. 67). The Court has considered the parties' submissions and decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the following reasons, the motion is GRANTED in part and DENIED in part.

**I.    BACKGROUND**

Because Defendants' motion to dismiss challenges limited aspects of the SAC, the Court provides only a brief overview of the facts and procedural history here and then outlines the facts more particularly in the sections discussing Plaintiff's claims.

Plaintiff sues Defendants under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, for actions they took in attempting to collect a student loan debt that Plaintiff owed to Rutgers University. Those alleged actions include communications Defendants made to Plaintiff via letter, email, phone call, and voicemail. Some of the communications, moreover,

occurred in connection with a state court collection lawsuit that Defendants initiated and won against Plaintiff.

Plaintiff filed his original complaint on September 27, 2017, and he amended it on February 20, 2018. (D.E. Nos. 1 & 11). Defendants moved to dismiss the first amended complaint ("FAC") on March 6, 2018. (D.E. No. 13). The Court granted in part and denied in part the motion, dismissing four claims that are not in the SAC. (D.E. No. 24). On January 31, 2020, Plaintiff obtained leave to amend the FAC (D.E. No. 59) to (i) add several factual averments, all of which relate to conduct that took place on and after August 16, 2018 (D.E. No. 45-2, Ex. A ¶¶ 43–48); (ii) delete allegations pertaining to dismissed claims (*id.* ¶ 49); and (iii) add an allegation that Defendants violated the FDCPA "by communicating with Plaintiff at an unusual and/or inconvenient time" (*id.* ¶ 60). The SAC was docketed on February 6, 2020, and Defendants now move to dismiss the SAC.

## II.   LEGAL STANDARD

In assessing whether a complaint states a cause of action sufficient to survive dismissal under Rule 12(b)(6), the Court accepts "all well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "[T]hreadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements" are all disregarded. *Id.* at 878–79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and a claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Zuber v. Boscov's*, 871 F.3d 255, 258 (3d Cir. 2017) (first quoting *Santiago v. Warminster Twp.*, 629 F.3d

121, 128 (3d Cir. 2010); and then quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Although the Court is generally confined to the allegations in the pleadings in ruling on a motion to dismiss under Rule 12(b)(6), it may, without converting the motion to one for summary judgment, consider a document "*integral to or explicitly relied* upon in the complaint," as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (first quoting *Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996); and then quoting *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 368 n.9 (3d Cir. 1993)); *see also Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

## III.    DISCUSSION

The Court must first address the procedural issue Plaintiff raises based on Defendants having previously moved to dismiss the FAC.  Plaintiff argues that Defendants' motion contravenes Federal Rule of Civil 12(g)(2) because Defendants raise grounds for dismissal that could have been, but were not, asserted when they previously moved to dismiss the FAC.  (D.E. No. 78 ("Opp. Br.") at 7–9); *see generally* D.E. No. 67-14 ("Mov. Br."))[1]

Rule 12(g)(2) requires the Court to entertain only those arguments made by Defendants that were not previously available to them.  The text of the rule provides, "[e]xcept as provided in Rule 12(h)(2) or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its

---

[1]    Defendants have not directly responded to this argument in their reply brief.  (*See generally* D.E. No. 85 ("Reply"); *see also* D.E. No. 90, Plaintiff's Sur-Reply Brief at 4).

3

earlier motion." Fed. R. Civ. P. 12(g)(2). This rule applies with equal force to motions to dismiss an amended complaint. *See Bell v. Lockheed Martin Corp.*, No. 08-6292, 2011 WL 1467365, at *7 (D.N.J. Apr. 18, 2011) (explaining that "[t]he filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading." (quoting 5C Charles Alan Wright, et al., Federal Practice & Procedure § 1388, at 491 (4th ed. 2009))). Because Defendants' motion is not consistent with Rule 12(h)(2) or (3),[2] the Court considers only arguments that were not previously available to them—i.e., arguments pertaining to the allegations that are absent from the FAC and were added to the SAC.[3]

### A. Seeking to Collect Excess Debt in the State Court Action

Plaintiff adds a claim in the SAC that Defendants violated §§ 1692e(2)(B) and 1692f(1) of the FDCPA by requesting an amount in attorneys' fees in excess of state law in the state court action. As alleged in the SAC, on August 16, 2018, in the state court collection action, Defendants filed a summary judgment motion seeking a 40% contingency fee, which amounted to $5,609.84, for their services. (SAC ¶ 43 & Ex. J). On September 26, 2018, the state court granted Defendants' motion for summary judgment but reduced the fee award to $4,207.34 because state law set a maximum for contingency fee awards for "up to 30 percent of the debt collected." (*Id.* ¶ 45 & Ex.

---

[2] Rule 12(h)(3) applies only to motions to dismiss for lack of "subject-matter jurisdiction," and Rule 12(h)(2) requires a party to raise a previously available but omitted failure-to-state-a-claim argument in one of three ways, which Defendants did not do. The Third Circuit has held that parties must proceed under Rule 12(h)(2)'s three enumerated avenues to raise the previously available but omitted failure-to-state-a-claim argument. *See Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321–22 & n.5 (3d Cir. 2015) (emphasizing that enforcing Rule 12(g)(2) may "motivate defendants to consolidate their arguments in a single pre-answer motion"). The Court enforces the rule here.

[3] The arguments that the Court does not consider concern Plaintiff's allegations that Defendants violated (i) § 1692c(a)(2) by serving various motions on him when they knew he was represented by counsel (Mov. Br. at 11–13); (ii) § 1692e by not disclosing a communication was from a debt collector when serving a motion on him (*id.* at 15–16); (iii) § 1692e by sending a letter without disclosing it was from a debt collector (*id.* at 16–17); (iv) § 1692e by issuing threats via telephone and email that they could not, or did not intend to, take (*id.* at 20–26); and (v) § 1692g by sending an initial demand without properly noticing him of certain rights he had (*id.* at 28–30).

4

K). Plaintiff claims that Defendants' attempt to collect fees in excess of state law violated §§ 1692e(2)(B) and 1692f(1). (*Id.* ¶¶ 45, 65 & 70).

Section 1692e(2)(B) specifically forbids debt collectors from falsely representing "any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." And § 1692f(1) specifically forbids "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) *unless* such amount is expressly authorized by the agreement creating the debt or permitted by law."

Defendants move to dismiss the above claim. Relying on exhibits that were not appended to Plaintiff's SAC, Defendants argue that Plaintiff agreed with Rutgers University "to pay all collection costs" if Rutgers University had to refer his account to an attorney for collection. (Mov. Br. at 19 (citing D.E. No. 67-3 (loan agreement)); Reply at 4 (citing D.E. No. 67-3 (deposition of Plaintiff))).[4] Therefore, Defendants argue, Plaintiff fails to state a claim under § 1692f(1). Even assuming the Court may rely on those exhibits,[5] the Court disagrees with Defendants.

If Plaintiff agreed "to pay all collection costs" of Rutgers University, then he agreed to pay Rutgers University's collection costs. Rutgers University's collection costs are the fees they agreed to pay Defendants in carrying out their debt-collection services. Thus, Defendants' argument turns on a factual question—whether Rutgers University agreed to pay Defendants a

---

[4] In their reply brief, Defendants for the first time raise the defense of collateral estoppel. (Reply at 2–4). Defendants argue Plaintiff is collaterally estopped from asserting violations of the FDCPA for Defendants' attempt to collect an amount in excess of what is allowed by law because the state court ruled on summary judgment that Plaintiff agreed to pay all collection costs. (*Id.* at 3). But the state court reduced the award, and for purposes of this motion to dismiss, the Court is assessing whether Plaintiff plausibly alleges that Defendants violated §§ 1692e(2)(B) and 1692f(1) by seeking an amount in excess of the amount permitted under state law. Because the issues are different, collateral estoppel does not apply. *See United States v. Stewart*, 431 F. App'x 122, 124 (3d Cir. 2011) ("However, collateral estoppel only bars a later proceeding when the same issue was previously litigated by the same parties.").

[5] Plaintiff does not specifically address whether the Court may properly consider Plaintiff's loan agreement with Rutgers University. (*See generally* Opp. Br.). The Court is skeptical whether it may consider Plaintiff's loan agreement with Rutgers University or his deposition transcript in the state court case. Either way, Plaintiff's claim survives.

40% contingency fee, a fee in excess of state law. Indeed, if Rutgers University did not agree to pay that fee, then Defendants were not seeking "all collection costs" of Rutgers University. But the Court cannot answer that factual question at this stage of the litigation. As Plaintiff points out, "nowhere in the tuition contract that Defendants rely upon is there a reference to a 40% collection fee." (Opp. Br. at 20). And nothing in Plaintiff's SAC—or in Defendants' exhibits—suggests that Rutgers University expressly agreed to pay that fee.[6]

Plaintiff therefore states a plausible claim under §§ 1692e(2)(B) and 1692f(1).

**B.     The January 23, 2019 Email**

In the SAC, Plaintiff adds a claim under § 1692e(5) based on a January 23, 2019 email from Daniel Berger to Plaintiff. (SAC ¶ 46). Section 1692e(5) prohibits debt collectors from "threat[ing] to take any action that cannot legally be taken or that is not intended to be taken." As alleged in the SAC, Daniel Berger sent the email, with permission of Plaintiff's counsel, advising Plaintiff that Defendants were "authorized by law to apply to the court for a warrant for [Plaintiff's] arrest" because he did not respond to an "Information Subpoena." (SAC, Ex. L; *see also id.* ¶ 46). But "as a courtesy," Daniel Berger went on, "we will refrain from moving forward with our application for an arrest warrant if we are in receipt of your certified answers prior to the end of the month." (*Id.*, Ex. L). The "end of the month" was about a week away. Plaintiff did not comply and was never arrested, despite the imminent threat in the email. Plaintiff claims that correspondence violates § 1692e(5) because Defendants did not actually intend to execute an arrest warrant. (*Id.* ¶ 66; Opp. Br. at 22–23).

Defendants move to dismiss the above claim, arguing that the state court authorized them

---

[6] Moreover, there is a legal question whether § 1692f(1) permits debt collectors to pursue unlawful agreed-upon debts. *Compare Tuttle v. Equifax Check*, 190 F.3d 9, 13 (2d Cir. 1999), *with Olvera v. Blitt & Gaines, P.C.*, 431 F.3d 285, 287 (7th Cir. 2005). That legal question has not been briefed, and it is unnecessary for the Court to consider in deciding this motion to dismiss.

6

to seek an arrest warrant of Plaintiff if he did not comply with their subpoena, and that they intended to an execute an arrest warrant but did not do so because Plaintiff moved to Pennsylvania. (Mov. Br. at 27). In support, Defendants cite two orders of the state court in the underlying debt collection action dated January 11, 2019, and August 2, 2019. (D.E. Nos. 67-12 & 67-13). The January 11 order stated that if Plaintiff "fails to comply with the Information Subpoena within ten (10) days of the certified date of personal service or mailing this order, a warrant for the defendant's arrest may issue out of this Court without further notice." (D.E. No. 67-12). The August 2 order specified that "[n]o arrest is authorized unless and until a properly worded Warrant for Arrest is submitted to the Court for consideration." (D.E. No. 67-13).[7]

However, the state court orders are not dispositive to whether Plaintiff sufficiently pleads his claim. The SAC raises the plausible inference that, because Defendants never executed an arrest warrant despite threatening to do so imminently, Defendants' threat was no more than to scare Plaintiff into paying his debt earlier. *See, e.g.*, *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 825 (D.N.J. 2018) ("A debt collector also violates the [1692e(5)] by falsely threatening *imminent* litigation before the decision whether to sue has been made." (emphasis in original)); *Piccinetti v. Clayton, Myrick, McClanahan & Coulter, PLLC*, No. 16-4032, 2017 WL 3879085, at *3 (D.N.J. Sept. 5, 2017) (threat to take imminent legal action that did not come until months later actionable under § 1692e(5)); *see also Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006) (threat of imminent legal action that is not taken and is rarely, if ever, taken is

---

[7] Plaintiff argues that the Court cannot consider those orders because they are extraneous to the SAC. (Opp. Br. at 23 n.6). But in ruling on a motion to dismiss, the Court may consider matters of public record, and "the state court orders and filings [are] appropriate on a motion to dismiss because they are matters of public record." *Willekes v. Serengeti Trading Co.*, No. 13-7498, 2016 WL 5334522, at *1 n.1 (D.N.J. Sept. 22, 2016); *see also Lum v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004) (explaining that a "prior judicial opinion constitutes a public record of which a court may take judicial notice, [but] it may do so on a motion to dismiss only to establish the existence of the opinion, not for the truth of the facts asserted in the opinion"), *abrogated on other grounds as recognized in Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, 742 F. App'x 628, 632 (3d Cir. 2018).

actionable under § 1692e(5)); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (similar). Defendants' arguments—that the court orders show they could have sought an arrest warrant against Plaintiff, and that they decided not to execute an arrest warrant because Plaintiff moved to Pennsylvania—raise factual issues that are not appropriate to decide on a motion to dismiss. *See Morganroth & Morganroth v. Norris, McLaughlin & Marcus, P.C.*, 331 F.3d 406, 416 (3d Cir. 2003) (attorney litigation strategy presented "factual questions that cannot be resolved on a 12(b)(6) motion to dismiss"); *Newman v. Checkrite California, Inc.*, No. 93-1557, 1994 WL 896637, at *1 (E.D. Cal. Feb. 18, 1994) ("The defendants' intent to litigate is a disputed factual question that cannot be determined on a motion to dismiss.").

Plaintiff therefore states a plausible claim under § 1692e(5).

### C. The January 30, 2019 Phone Call and Voicemail

On January 30, 2019, Daniel Berger left a voicemail "for" Plaintiff but did not disclose that the call was from a debt collector. (SAC ¶ 47). Plaintiff claims that the voicemail violates §§ 1692d and 1692e(11). (*Id.* ¶¶ 62 & 68). Before considering each provision, the Court dismisses this claim against Edward Berger because, as Defendants point out, there is no allegation that he was involved in the voicemail. (Mov. Br. at 15).

#### i. Section 1692d

Section 1692d(6) specifically prohibits a debt collector from calling a consumer "without meaningful disclosure of the caller's identity" unless authorized under 1692b. While no Third Circuit case has directly addressed "the necessity for a debt collector to identify itself in either a voicemail or answering machine message," several "district courts have determined that a debt collector's failure to reveal itself" in such circumstances "violates the FDCPA." *Pisarz v. GC Servs. Ltd. P'ship*, No. 16-4552, 2017 WL 1102636, at *6 (D.N.J. Mar. 24, 2017) (collecting

8

cases). The exception to this mandate is § 1692b, which prohibits debt collectors from disclosing certain information, such as their identity or the fact the consumer owes a debt, to third parties whom they are contacting "for the purpose of acquiring location information about the consumer." *See* §§ 1692b(2), (5).

Defendants argue that Plaintiff insufficiently pleads a violation of § 1692d because he does not plead that his voicemail disclosed his own identity and, consequently, did not plausibly plead that Daniel Berger would not have violated § 1692b by disclosing his identity as a debt collector. (Mov. Br. at 14). Said another way, Defendants contend that Plaintiff must plead—and did not plead—that Daniel Berger could have lawfully disclosed his identity as a debt collector. (*Id.*).

But even assuming a plaintiff must plead around the exception, Plaintiff alleges that Daniel Berger left a voicemail "for" him and that he had previously spoken to Defendants on the phone—on October 13, 2016, and on January 3, 4, and 6, 2017. (SAC ¶¶ 30 & 47). Plaintiff has thus plausibly alleged that Daniel Berger knew he was calling Plaintiff, not a third party, on January 30, 2019, because he left a voicemail "for" Plaintiff and knew Plaintiff's phone number from when they previously spoke on the phone. Defendants' arguments regarding whether and how Daniel Berger was trying to avoid a violation of § 1692b relies on facts that are not on the face of the SAC and cannot appropriately be considered on this motion to dismiss.[8]

Plaintiff therefore states a claim under § 1692b against Daniel Berger.

    ii.    **Section 1692e(11)**

Section 1692e(11) requires debt collectors "to disclose in subsequent communications"

---

[8] Moreover, § 1692b, and the similar provision in § 1692c, require that the debt collector communicate "with" a third party, and it is unclear whether Daniel Berger would have communicated "with" a third party by disclosing his name on Plaintiff's voicemail. *See Nelson v. Receivables Outsourcing, LLC*, No. 17-11543, 2018 WL 3854796, at *3 (D.N.J. Aug. 14, 2018) ("While there appears to be no Third Circuit precedent regarding the use of voice-mail messages converted into text on cell phones, the Circuit has generally declined to impose liability where a communication is directed specifically at the debtor." (citing *Davis v. Phelan Hallinan & Diamond PC*, 687 F. App'x 140, 144 (3d Cir. 2017))); *Duran v. Midland Credit Mgmt., Inc.*, No. 15-5940, 2016 WL 3661538, at *3 (S.D.N.Y.

9

with consumers "that the communication is from a debt collector." Defendants argue that Plaintiff did not sufficiently plead a claim under § 1692e(11) because the SAC does not allege the factual content of the voicemail. (Mov. Br. at 14). Thus, Defendants say, the Court cannot reasonably infer that the voicemail was a communication within the meaning of the FDCPA. (*Id.*). Plaintiff responds that, because "Defendants engaged in a series of communications with Plaintiff seeking to collect money," the Court can plausibly infer that this voicemail was yet another one of those attempts. (Opp. Br. at 15). The Court agrees with Plaintiff.

Unlike § 1692d(6), a debt collector must engage in a "communication" in order to violate § 1692e(11). *Cf. Scribner v. Works & Lentz, Inc.*, 655 F. App'x 702, 704 (10th Cir. 2016) ("[T]here are numerous prohibitions in the FDCPA not involving a communication, such as 15 U.S.C. §§ 1692d(1) . . . ."). Section 1692a(2) defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." An actionable communication under § 1692e(11) must be a communication "in connection with the collection of any debt." § 1692e. The communication need not contain an explicit demand for payment. Instead, "[f]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor." *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 266 (3d Cir. 2013) (citing *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010)). Thus, "a letter that is not itself a collection attempt, but that aims to make . . . such an attempt more likely to succeed, is one that has the requisite connection." *Id.* at 266 (quoting *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011)).

By alleging a series of communications, the SAC plausibly alleges that Daniel Berger's

---

June 30, 2016) ("It would be unreasonable to construe 'communicate with' so broadly as to encompass the accidental transmittal of information to an eavesdropper or interceptor. It simply cannot be said that John Gotti 'communicated with' the law enforcement agents who were listening to his phone calls via wiretap, or that the Nazis 'communicated with' the Allies when the Allies cracked the Enigma code.").

January 30 voicemail sought to make collection of Plaintiff's debt more likely. As Plaintiff alleges, a week prior to the voicemail, Daniel Berger threatened to execute an arrest warrant if Plaintiff did not comply with an information subpoena. (SAC ¶ 46 & Ex. L). And a day later, on January 31, Daniel Berger emailed Plaintiff attaching the amount of the remaining judgment and requesting him to pass along his financial information to Rutgers University before they could discuss settlement. (*Id.* ¶ 48 & Ex. M). Plaintiff alleges that, prior to both of those communications, Defendants together engaged in several actionable communications under the FDCPA.

At least for purposes of this motion, it is insignificant that the SAC leaves out details and the content of the voicemail. The Third Circuit has never held that a voicemail must contain information about the debt itself to be a communication, and "[n]umerous district courts, including courts in this district, have rejected such a position." *Pisarz*, 2017 WL 1102636, at *9 (collecting information). For example, in *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006), the court held that a pre-recorded voicemail was a communication under the FDCPA, despite it not disclosing specific information about a particular debt and only "advis[ing] the debtor that the matter required immediate attention, and provided a specific number to call to discuss the matter." *Id.* at 656. And in *Sussman v. I.C. System, Inc.*, 928 F. Supp. 2d 784 (S.D.N.Y. 2013), the court held that a communication may occur when a debt collector calls a debtor and hangs up either prior to or as soon as the call is answered by the debtor. *Id.* at 797. The reasons underlying *Sussman* and *Foti* are the same: Congress intended courts to construe the term "communication" broadly; and factually, the calls in *Sussman* and the voicemail in *Foti* provided the debtors with information sufficient for them to uncover that a debt collector called them to discuss a debt and to entice a return call, making it plausible to infer that the voicemail or call conveyed information, albeit

indirectly, about a debt. *See id.* at 796–97; *Foti*, 424 F. Supp. 2d at 658.

*Sussman* and *Foti* are persuasive here. Plaintiff alleges that he could identify the caller as Daniel Berger based on the voicemail and could infer that Daniel Berger sought to entice a return call based on the fact they communicated via email the following day. Those allegations raise the plausible inference that the voicemail conveyed information about the debt—albeit indirectly.

Plaintiff thus states a plausible claim under § 1692e(11).

### D.      The January 31, 2019 Email

On January 31, 2019, at 9:06 p.m., Daniel Berger emailed Plaintiff, attaching "the writ of execution . . . reflecting the remaining judgment amount." (SAC, Ex. M; *see also id.* ¶ 48). He also asked for Plaintiff's financial information to relay to Rutgers University to discuss possible settlement. (*Id.*, Ex. M). Plaintiff claims that the communication was at an unusual and inconvenient time and therefore in violation of § 1692c(a)(1). (*Id.* ¶¶ 48 & 60).

Section 1692c(a)(1) prohibits debt collectors from communicating with a consumer at "any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer"—unless the debt collector does so with prior consent of the consumer or approval of a court. Section 1692c(a)(1) further presumes that communications before 8:00 a.m. and after 9:00 p.m. are inconvenient.

While Defendants concede that Daniel Berger emailed Plaintiff at a presumptively inconvenient time, they raise three arguments against Plaintiff's claim. None is persuasive. First, they argue that the email was not a communication within the meaning of the FDCPA. (Mov. Br. at 9–11). But a plausible inference is that the email conveyed information about a debt by attaching the amount of the remaining judgment, and that the email sought to make to payment more likely by requesting Plaintiff's financial information to make possible settlement more likely. Second,

12

and relatedly, Defendants argue that emails should not, "as a matter of law," fall within the ambit of § 1692c(a)(1). (Mov. Br. at 11). However, Defendants offer no support for this proposition, and the plain text of § 1692a(2) indicates that a "communication" can be made "through any medium." Third, Defendants argue that because Plaintiff emailed Daniel Berger previously at 7:52 p.m., Daniel Berger's responsive email at 9:06 p.m. was not, or could not reasonably have been known to be, an inconvenient time for Plaintiff. (Mov. Br. at 9). But that factual averment—that Plaintiff emailed Daniel Berger first—is not in the SAC. Even still, whether the communication was at an unusual time, considering Plaintiff's earlier response, raises a factual question that cannot be decided at this stage of the litigation.

Therefore, Plaintiff sufficiently pleads a claim under § 1692c(a)(1).

### IV.   CONCLUSION

For these reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. An appropriate Order accompanies this Opinion.

Dated: November 12, 2021

*/s/Esther Salas*
Esther Salas, U.S.D.J.

13