NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| OLU OMODUNBI,<br><br>          Plaintiff,<br><br>v.<br><br>GORDIN & BERGER, P.C., EDWARD<br>BERGER, AND DANIEL BERGER,<br><br>          Defendants. | Civil Action No. 17-7553 (JKS) (JSA)<br><br><br>**OPINION**<br><br>June 27, 2024 |

**SEMPER**, District Judge.

Before the Court are cross motions for summary judgment: Defendants Gordin & Berger, P.C., Edward Berger, and Daniel Berger's (collectively "Defendants") motion for summary judgment (ECF 205) and Plaintiff Olu Omodunbi's motion for summary judgment (ECF 207). The Court reviewed the parties' submissions and decided the motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part** and Plaintiff's motion for summary judgment is **GRANTED in part** and **DENIED in part.**

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY [1]

In the fall 2009 and spring 2010 semesters, Plaintiff pursued a master's degree in mathematical finance from Rutgers University ("Rutgers"). (ECF 172-5, DSMF ¶ 15; ECF 173-8,

---

[1] The facts and procedural history are drawn from the Second Amended Complaint, (ECF 60, "SAC."), Defendants' brief in support of its motion for summary judgment (ECF 205, "DMSJ Br."), Plaintiff's brief in support of his motion for summary judgment (ECF 207, "PMSJ Br."), both parties' respective opposition papers (ECF 174, "Pl. Opp." and ECF 175, "Defs. Opp."), and the parties' submissions regarding undisputed material facts (ECF 172-5; "DSMF"); (ECF 173-8, "PSMF"); (ECF 175-5, "Opp to PSMF."); (ECF 174-3, "Opp. to DSMF").

PSMF ¶¶ 1-2.) During the fall semester, Plaintiff was enrolled in four classes and incurred a bill for $16,130.70. (DSMF ¶ 16.) Through private financing, Plaintiff paid down his tuition bill to $1,130.70. (DSMF ¶¶ 18, 21.) For the spring semester, Plaintiff incurred a bill for $12,410.70. (DSMF ¶ 21.) For both semesters, Plaintiff owed Rutgers $13,541.50. (DSMF ¶ 21; PSMF ¶ 5.)

To collect the outstanding debt, Rutgers referred Plaintiff's matter to Defendant Gordin & Berger. (DSMF ¶ 49.) On September 27, 2016, Plaintiff received a letter ("September 27, 2016 Letter") from Defendants regarding tuition owed to Rutgers. (DSMF ¶¶ 27-28; PSMF ¶¶ 6-7.) The total amount due as stated in the letter was $14,075.40.  (DSMF ¶ 27; PSMF ¶ 6.) Plaintiff asserts that the September 27, 2016 Letter consisted of one single page. (PSMF ¶ 6.) Defendants assert that attached to the September 27, 2016 Letter was a second page entitled "Important Notice," which indicated Plaintiff had the right to dispute the validity of the debt or any portion thereof, and that upon written request, verification of the debt would be sent to Plaintiff. (DSMF ¶ 29.) Plaintiff contests that the September 27, 2016 Letter did not include this second page, and instead asserts that the Letter failed to provide disclosures required by the FDCPA or notice that would have informed Plaintiff of his right to dispute the debt or seek validation of the debt. (PSMF ¶¶ 6, 8; Omodunbi Decl. ¶ 7.)

On October 10, 2016, Plaintiff sent Defendants a letter disputing the validity of the debt amount and requesting proof of the amount claimed. (DSMF ¶ 34; PSMF ¶ 9.) On October 25, 2016, Defendants responded to Plaintiff via letter. (DSMF ¶ 35; PSMF ¶ 10.) The October 25, 2016 Letter stated: "Now that we have validated the charges, you must begin making installment payments of $100.00 per month as soon as possible." (*See* ECF 172-3, Affidavit of Edward L. Berger ¶ 25, Ex. 1D.) The parties dispute whether this statement was a demand for payment or a request. In a letter received by Defendants on November 30, 2016, Plaintiff responded by writing

"[d]ue to my current conditions, I am only able to pay $25 per month. Can you please confirm this agreement so I can start making payments next month?" (*See* ECF 172-3, Affidavit of Edward L. Berger Ex. 1E.) That same day, Defendants called Plaintiff to discuss collection of the debt, but Plaintiff stated he could not speak at that time. (DSMF ¶ 37.) On December 8, 2016, Defendants called Plaintiff, but did not reach him. (*Id.* ¶ 39.) The parties spoke on the phone on either October 13 or 14, 2016, January 3, 2017, January 4, 2017, and January 6, 2017. (*Id.* ¶ 41; PSMF ¶ 12.)

On December 21, 2016, Gordin & Berger initiated suit against Mr. Omodunbi on behalf of Rutgers University in the Superior Court of New Jersey, Hudson County in the Special Civil Part of the Law Division, case caption *Rutgers, The State University of New Jersey v. Olu Omodunbi*, Docket Number HUD-DC-12959-16 ("State Court Action"). (DMSJ Br. at 1; PSMF ¶ 11.) On January 3, 2017, upon being served with the summons and complaint, Plaintiff called Defendants. (DSMF ¶ 51.) Defendants allege the parties engaged in negotiations regarding the outstanding debt. (*Id.* ¶¶ 53-55.) On January 4, 2017, Defendant Edward Berger called Plaintiff but was unable to reach him. (*Id.* ¶ 55.) Defendants assert that because Plaintiff's voicemail did not identify him, Defendant Edward Berger left a voicemail with his name and phone number and requested a call back from Plaintiff. (*Id.* ¶ 56.) That same day, Plaintiff returned the call, and the parties engaged in further negotiations. (*Id.* ¶¶ 57-61.) During this call, Defendant Edward Berger requested Plaintiff's email address. (*Id.* ¶ 57.) On January 6, 2017, Plaintiff called Defendants and made "a counteroffer to pay $300 per month until the outstanding balance of $14,075.40 was paid in full, with the first payment to be paid immediately, and subsequent payments would be due on the 26th of every month thereafter." (DSMF ¶ 62.) Upon receipt of the first $300 payment, the lawsuit would be dismissed without prejudice. (*Id.* ¶ 65.) After two weeks, Defendants had not received payment; Defendant Edward Berger called Plaintiff but was unable to reach him. (*Id.* ¶ 66.) He

allegedly left a message with only his name and number and requested Plaintiff call back. (*Id.*)

On January 20, 2017, Defendant Edward Berger emailed Plaintiff and stated: "As I have not received the initial $300.00 installment, I will be proceeding to enter judgment against you." (*See* ECF 172-3, Affidavit of Edward L. Berger Ex. 1G.) Plaintiff retained an attorney, and Plaintiff filed an answer in the State Court Action on January 27, 2017. (DSMF ¶ 68; PSMF ¶ 15.)

On or about March 7, 2017, Defendants served upon Plaintiff a motion for leave to amend the complaint and transfer the case from the Special Civil Part to Law Division. (DSMF ¶ 72; PSMF ¶ 16.) On or about March 21, 2017, Defendants served Plaintiff with a second motion in the Special Civil Part for leave to amend the complaint. (DSMF ¶ 77; PSMF ¶ 17). On or about April 24, 2017, Defendants filed a motion to transfer the case from the Special Civil Part to the Law Division and served the motion upon Plaintiff. (DSMF ¶¶ 82-83; PSMF ¶ 18.) On or about August 28, 2017, Defendants served Plaintiff with a copy of a motion to strike. (PSMF ¶ 19.) The case was ultimately transferred to the Law Division. *See Rutgers, The State University of New Jersey v. Olu Omodunbi*, Docket No. HUD-L-1965-17. At the time Plaintiff received copies of the March 7, 2017, March 21, 2017, April 24, 2017, and August 28, 2017 papers, he was represented by Lawrence Hersh, Esq. (PSMF ¶ 20.)

The parties litigated the State Court Action. On September 26, 2018, the Honorable Mary K. Costello, J.S.C. granted Rutgers' motion for summary judgment against Olu Omodunbi and set forth the amount Mr. Omodunbi was to pay Rutgers:

| | |
|---|---|
| Principal Balance | $13,541.40 |
| Late Fee | $ 50.00 |
| Interest/Penalty | $ 484.00 |
| Credits | ($ 50.79) |
| Contingency Fee | $ 4,207.34 |
| Additional Costs | $ 1,204.60 |
| **GRAND TOTAL** | $19,487.34 |

(ECF 172-11, Ex. 5.) Although Defendants sought a contingency fee of 40%, Judge Costello reduced the fee to 30% of the principal balance. (*Id.*)

On October 24, 2018, Defendants served an information subpoena upon Plaintiff's counsel. (DSMF ¶ 119.) On December 20, 2018, Defendants filed a motion to enforce litigants rights. (*Id.* ¶ 120.) Judge Costello ultimately granted the motion. (ECF 172-24, Ex. 15.) Defendant Daniel Berger emailed Mr. Omodunbi on January 23, 2019 and stated the following:

> You are being contacted directly pursuant to the permission from your attorney and court authorization. Attached hereto is the Information Subpoena and Questions that were served on you through your attorney on October 24, 2018. Also attached hereto is the Order granting the motion to enforce litigant's rights. Pursuant to court rules and the attached order, you have been compelled to furnish appropriate answers to the Information Subpoena.
> As you have not responded within ten (10) days from the date of the order, we are now authorized by law to apply to the court for a warrant for your arrest. However, since it is unclear to us at this time whether or not your attorney, in fact, provided you with all of the above paperwork, as a courtesy, we will refrain from moving forward with our application for an arrest warrant if we are in receipt of your certified answers prior to the end of the month.
> Please give this matter your prompt attention.

(ECF 172-24, Ex. 15.)

On January 29, 2019, Plaintiff sent Defendants an email stating that he wanted to "resolve the outstanding judgment." (DSMF ¶ 126.) On January 30, 2019, Defendant Daniel Berger left Mr. Omodunbi a voicemail and said, "Yes, hi. This is, Dan Berger. I was just calling to just to reach Olu Omodunbi. If you can give me a call back, that would be great. My number is [omitted]. Thanks. Bye." (PSMF ¶ 22; *see* DSMF ¶ 129.) On January 31, 2019 at 7:52 p.m. Mr. Omodunbi wrote an email to Dan Berger that stated, in relevant part, "I received your voicemail message. As I mentioned in my previous email, I would like to resolve the outstanding judgment. Please let me know what the bottom line, lump sum figure that it would take to resolve this matter. Also, please

let me know what the total amount of the judgment is, with all fees, expenses and interest." (*See* ECF 48-2.) On the same day, at 9:06 p.m. or 9:07 p.m., Defendant Dan Berger emailed a reply to Plaintiff.[2] (*Id.*; DSMF ¶ 131; PSMF ¶ 39.)

On September 27, 2017, Plaintiff filed his original Complaint in this Court. (ECF 1.) He alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, for actions Defendants took in attempting to collect a student loan debt that Plaintiff owed to Rutgers University. (*Id.*) As explained above, those alleged actions include communications Defendants made to Plaintiff via letter, email, phone call, and voicemail. (*Id.*) Some of the communications occurred in connection with a State Court Action that Defendants initiated and won against Plaintiff. (*Id.*)

Plaintiff amended his complaint on February 20, 2018. (ECF 1; ECF 11). Defendants moved to dismiss the First Amended Complaint ("FAC") on March 6, 2018. (ECF 13). The Court granted in part and denied in part the motion, dismissing four claims. (ECF 24). On February 6, 2020, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF 60.) Defendants moved to dismiss. (ECF 67.) The Court granted in part and denied in part the motion, dismissing two claims and granting Plaintiff leave to amend the SAC. (ECF 107; ECF 108.) Plaintiff did not do so. The parties engaged in discovery. Now, Plaintiff and Defendants seek summary judgment.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted if the movant shows that "there is no genuine issue as to any material fact and the moving party is

---

[2] The email states: "Attached is the writ of execution that was issued on December 19, 2018 reflecting the remaining judgment amount as of that date. That does not include any costs or interest that has been incurred or accrued since then.

At this time Rutgers agrees that we should find out what financial position you are in before we make any offers, however, if you have an offer you would like me to pass along I would have to pass along the same to them in accordance with the rules of professional conduct."

entitled to judgment as a matter of law." *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. . . . there can be 'no genuine issue of material fact,' since a complete failure of

proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23). Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

When, as here, the parties file dueling motions for summary judgment, the governing standard "does not change." *Auto-Owners Ins. Co. v. Stevens & Ricci, Inc.*, 835 F.3d 388, 401 (3d Cir. 2016) (citing *Appelmans v. City of Phila.*, 826 F.2d 214, 216 (3d Cir. 1987)). The court must consider the motions independently, in accordance with the principles outlined above. *Goldwell of N.J., Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 184 (D.N.J. 2009); *Williams v. Phila. Housing Auth.*, 834 F. Supp. 794, 797 (E.D. Pa. 1993), *aff'd*, 27 F.3d 560 (3d Cir. 1994). "That one of the cross-motions is denied does not imply that the other must be granted." *Indus. Corner Corp. v. Pub. Serv. Mut. Ins. Co.*, No. 20-06677, 2023 U.S. Dist. LEXIS 22017, at *14 (D.N.J. Feb. 8, 2023). For each motion, "the court construes facts and draws inferences in favor of the party against whom the motion under consideration is made" but does not "weigh the evidence or make credibility determinations" because "these tasks are left for the fact-finder." *Pichler v. UNITE*, 542 F.3d 380, 386 (3d Cir. 2008) (internal quotation and citations omitted).

## III.   ANALYSIS

In 1977, Congress enacted the FDCPA to eliminate "abusive, deceptive, and unfair debt collection practices" by debt collectors. 15 U.S.C. § 1692a. The FDCPA creates a civil cause of action for any individual who sustains damages due to a debt collector's violation of the Act. *Barclift v. Keystone Credit Servs., LLC*, 93 F.4th 136, 141 (3d Cir. 2024) (citing 15 U.S.C. § 1692k).

## A.      Standing

Defendants assert that Plaintiff lacks Article III standing to assert any of his FDCPA claims. (DMSJ Br. at 4-9.) Article III of the Constitution grants federal courts judicial power to resolve cases and controversies. *Barclift*, 93 F.4th at 141 (citing U.S. Const. art. III, §§ 1-2). "The doctrine of standing ensures that courts do not overstep their role by 'limit[ing] the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong.'" *Barclift*, 93 F.4th at 141 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). A plaintiff who seeks to vindicate his rights in federal court must satisfy Article III's standing requirements. *See Barclift*, 93 F.4th at 141; *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, (1992); *Finkelman v. Nat'l Football League*, 877 F.3d 504, 511 (3d Cir. 2017). Standing consists of (1) a concrete, particularized injury in fact; (2) a causal connection between the injury and the challenged conduct; and (3) a likelihood that the injury will be redressed by a favorable judicial decision. *Barclift*, 93 F.4th at 141 (citing *In re Horizon Healthcare Servs. Inc. Data Breach Litig.,* 846 F.3d 625, 633 (3d Cir. 2017)). To assess the concreteness of an asserted injury, courts must consider "whether the asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts—such as physical harm, monetary harm, or various intangible harms including . . . reputational harm." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (citing *Spokeo*, 578 U.S. at 340-41). The Third Circuit recently instructed that in assessing whether a plaintiff's intangible harm is "concrete," courts are to examine the kind of harm at issue. *Barclift*, 93 F.4th at 145. While "[l]egislatures may elevate certain nontraditional harms to 'legally cognizable injuries,' [] they 'may not simply enact an injury into existence, using [their] lawmaking power to transform something that is not remotely harmful into something that is.'" *Dervitz v. ARS Nat'l Servs.*, No. 22-3090, 2024 U.S. App. LEXIS 6576, at *6 (3d Cir. Mar. 19, 2024) (quoting *TransUnion LLC*,

594 U.S. at 425-26 (quotations omitted)). Therefore, "even if Congress says certain conduct is unlawful through legislation (such as the FDCPA), we must still look for a harm traditionally recognized at common law to determine whether that conduct is also traditionally harmful for purposes of standing under Article III." *Dervitz*, 2024 U.S. App. LEXIS 6576, at *6.

Defendants assert that Plaintiff lacks standing to assert his FDCPA claims. (DMSJ Br. at 4-9.) Specifically, Defendants argue that Plaintiff has failed to establish any concrete injury associated with the alleged FDCPA violations. (*Id.* at 4-9.) To prove standing at the summary judgment stage, a party "can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts establishing standing." *Greenberg v. Lehocky*, 81 F.4th 376, 384 (3d Cir. 2023); *see also Sierra Club v. Genon Power Midwest LP*, No. 19-1284, 2021 U.S. Dist. LEXIS 174710, at *5-6 (W.D. Pa. Sep. 14, 2021) ("At the summary judgment stage, the party with the burden of proving standing must show that there is a genuine issue of material fact as to the standing elements."); *Pennenvironment, Inc. v. U.S. Steel Corp.*, No. 19-484, 2022 U.S. Dist. LEXIS 60708, at *10-12 (W.D. Pa. Mar. 31, 2022) (looking beyond the complaint to determine if standing existed at the summary judgment stage).[3] In his opposition, Plaintiff asserts that he suffered the following concrete harms: (1) monetary losses in the form of postal costs, attorney's fees, and costs incurred in association with the State Court Action (Pl. Opp. at 3-7); (2) emotional distress, (*id.* at 7-10); and (3) detrimental reliance on threats of arrest, which led Plaintiff to limit his time in New Jersey and feel scared. (*Id.* at 10-11.) Plaintiff also filed a sworn declaration that further details the aforementioned concrete harms. (ECF 174-1 "Omodunbi II Decl.")

---

[3] The Court notes that in his Second Amended Complaint, Plaintiff states that he suffered injury in fact "by being subjected to unfair and abusive practices of the Defendants." (SAC ¶ 50.) He alleged to have "experienced emotional and mental distress, anxiety, and pain and suffering" because of Defendants' conduct. (*Id.* ¶ 57.) Plaintiff further states that he "suffered actual harm by being the target of the Defendants' misleading debt collection communications, and incurred legal fees and other expenses in defending the state court action which sought fees, costs and other amounts which Defendants were not entitled to collect." (*Id.* ¶ 51.)

### i.    Section 1692e

Plaintiff asserts Defendants violated 15 U.S.C. § 1692e by using false, deceptive, or misleading representations because the September 27, 2016 Letter included language that he could incur additional fees. (PMSJ Br. at 4.) Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Third Circuit has recognized that FDCPA claims related to false or misleading representations can be analogized to the tort of fraudulent misrepresentation. *Huber v. Simon's Agency, Inc.*, 84 F.4th 132, 148 (3d Cir. 2023); *see Linnabary v. Sequium Asset Sols., LLC*, No. 22-01565, 2024 U.S. Dist. LEXIS 18417, at *11 (W.D. Pa. Feb. 2, 2024). To establish standing under *TransUnion*, a plaintiff must show some cognizable harm that flows from the confusion caused by a defendant's false or misleading representations. *Huber*, 84 F.4th at 149. This harm can be a physical, monetary, or cognizable intangible harm, like a reputational or emotional harm. *Id.* at 148. Plaintiff asserts that Defendants' alleged misrepresentations caused him emotional distress. (*See* ECF 174-1, Omodunbi II Decl.) This emotional harm flows from Plaintiff's reliance upon the alleged misrepresentation. This harm may be redressed by this Court's decision. Therefore, Plaintiff has standing to assert this 15 U.S.C. § 1692e claim.

### a.    Section 1692e(2)(A)-(B)

Plaintiff asserts that Defendants' attempts to collect 40% and 33 and 1/3 % contingency fees in the State Court Action violated Section 1692e(2). 15 U.S.C. § 1692e(2)(A)-(B) provides that a debt collector violates the FDCPA if it engages in "[t]he false representation of—(A) the character, amount, or legal status of any debt; or (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt." As stated above, claims pursuant to Section 1692e can be analogized to common law claims of fraudulent

misrepresentation. *Huber*, 84 F.4th at 148. The traditionally recognized harm that provides a basis for fraudulent misrepresentation "is not the mere receipt of a misleading statement, or even confusion, without any further consequence." *Id.* It is a physical, monetary, or cognizable intangible harm, such as a reputational or emotional harm that flows from the plaintiff's reliance upon the misrepresentation. *Id.* Defendants argue that Plaintiff lacks standing to assert this claim because he was not injured; the state court ultimately reduced the fee sought by Defendants.[4] (DMSJ Br. at 7-8; SAC, Ex. K.) Plaintiff has not identified a "harm traditionally recognized at common law" that stems from Defendants' attempts to secure fees in excess of what was ultimately awarded in the State Court Action.[5] *Dervitz*, 2024 U.S. App. LEXIS 6576, at *6; *TransUnion LLC*, 594 U.S. at 425-26. Because Plaintiff has failed to identify a concrete injury connected to Defendants' attempts, he has not established standing, and the Court dismisses his Section 1692e(2)(A)-(B) claim without prejudice.

### b. Section 1692e(5)

Section 1692e(5) provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" including a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C.

---

[4] In her order granting summary judgment in the State Court Action in favor of Rutgers, the Honorable Mary J. Costello, J.S.C. wrote:

> The three (3) promissory notes clearly and unequivocally state that "In the event Rutgers, The State University refers this account to an attorney for collection, I agree to pay all collection costs." The plaintiff [Rutgers] attempted collection through their internal accounting office then resorted to an outside collection service. Finally, upon referral to an attorney, "collection costs" can only logically mean to include the professional fees of the attorney. This satisfies the rationale of *N.J. Higher Education Assistance Authority v. Martin*, 265 N.J. Super 564 (App. Div. 1993). However, N.J.A.C. 9A:10-6.16(b) limits the fee shifting to "up to 30 percent of the debt collected." As such, the total judgment amount has been amended as set forth above.

(ECF 173-6, Hersh Decl. Ex. 16.)

[5] The Court also notes that requests for attorney fees are directed at the court, not the plaintiff. *Prashad v. Robert L Saldutti, LLC*, No. 22-00535, 2023 U.S. Dist. LEXIS 86283, at *10 (D.N.J. May 17, 2023). It is the court that possesses the discretion to award or not award fees and—if so—what amount. *Id.*

§ 1692e(5). Plaintiff asserts that defendant Edward Berger's January 20, 2017 email was a false threat in violation of Section 1692e(5). (PMSJ Br. at 21-22.) The email states: "As I have not received the initial $300.00 installment, I will be proceeding to enter judgment against you." (*See* ECF 172-3, Affidavit of Edward L. Berger Ex. 1G.) Defendants argue Plaintiff lacks standing to assert this Section 1692e(5) claim because he has not demonstrated any harm in connection with the alleged false threats or misrepresentations. (DMSJ Br. at 6-7.) As stated above, claims pursuant to Section 1692e can be analogized to common law claims of fraudulent misrepresentation. *Huber*, 84 F.4th at 148. Here, Plaintiff sufficiently alleges a concrete harm in connection with the alleged misrepresentation. Plaintiff states "[t]he threat of a default judgment being entered against me in addition to the threat of wage garnishment, only increased the level of stress that I was feeling as a result of Defendants' conduct." (Omodunbi II Decl. ¶ 22.) This emotional harm flows from Plaintiff's reliance upon the alleged misrepresentation that Plaintiff could be arrested. This harm may be redressed by this Court's decision. Therefore, Plaintiff has standing to assert this 15 U.S.C. § 1692e(5) claim.

Plaintiff also asserts that Defendants' January 23, 2019 email violated Section 1692e(5) because it was a false threat to arrest Plaintiff. (PMSJ Br. at 29-30; ECF 172-24, Ex. 15.) Defendants argue Plaintiff lacks standing to assert a Section 1692e(5) claim based on this email because Plaintiff has not demonstrated any harm in connection with the alleged false threats. (DMSJ Br. at 6-7.) As stated above, claims pursuant to Section 1692e can be analogized to common law claims of fraudulent misrepresentation. *Huber*, 84 F.4th at 148. Here, Plaintiff sufficiently alleges a concrete harm in connection with the alleged misrepresentation. Plaintiff states that he was "afraid" (*id.* ¶ 49) and "[e]ven while living out of state, [] constantly [] looking over [his] shoulder, thinking that [he] may be arrested." (Omodunbi II Decl. ¶ 50.) This emotional harm flows

from Plaintiff's reliance upon the alleged misrepresentation that Plaintiff could be arrested. This harm may be redressed by this Court's decision. Therefore, Plaintiff has standing to assert this 15 U.S.C. § 1692e(5) claim.

Plaintiff asserts that Defendants violated Section 1692e(5) by impermissibly adding language to a proposed order that Mr. Omodunbi's attorney Lawrence C. Hersh violated Rutgers rights as a litigant, and Mr. Hersh would pay the attorney fees in connection with the motion. (*See* Hersh Decl. Ex. 18.) Plaintiff also asserts that Defendants violated Section 1692e(5) by impermissibly adding language to another proposed order directed at Mr. Hersh and his conduct. (*See* Hersh Decl. Ex. 19.) Plaintiff has not alleged any harm to himself in connection with these proposed additions to the proposed orders. Plaintiff therefore lacks standing to assert Section 1692e(5) claims based on this conduct.

Further, Plaintiff asserts that Defendants violated Section 1692e(5) by "chang[ing] the signature block on the information subpoena so that the undersigned Plaintiff's counsel would be personally required to certify that Plaintiff's answers were true and correct." (PMSJ Br. at 39.) Plaintiff has not identified a harm he experienced in connection with the addition of his counsel's signature block on the information subpoena. Plaintiff therefore lacks standing to assert a Section 1692e(5) claim based on this conduct.

### c. Section 1692e(11)

Plaintiff asserts that Daniel Berger's January 30, 2019 voicemail violated Section 1692e(11) because he did not identify himself as a debt collector. (PMSJ Br. at 33.) Section 1692e(11) provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. . . . the following conduct is a violation of this section . . . the failure to disclose in subsequent communications that the

> communication is from a debt collector, except that this paragraph
> shall not apply to a formal pleading made in connection with a legal
> action.

15 U.S.C. § 1692e(11). On January 29, 2019, Plaintiff sent Defendants an email stating that he

wanted to "resolve the outstanding judgment." (DSMF ¶ 126.) On January 30, 2019, Defendant

Daniel Berger left Mr. Omodunbi a voicemail and said, "Yes, hi. This is, Dan Berger. I was just

calling to just to reach Olu Omodunbi. If you can give me a call back, that would be great. My

number is [omitted]. Thanks. Bye." (PSMF ¶ 22; *see* DSMF ¶ 129.) On January 31, 2019 at 7:52

p.m. Mr. Omodunbi wrote an email to Dan Berger that stated, in relevant part, "I received your

voicemail message. As I mentioned in my previous email, I would like to resolve the outstanding

judgment. Please let me know what the bottom line, lump sum figure that it would take to resolve

this matter. Also, please let me know what the total amount of the judgment is, with all fees,

expenses and interest." (*See* ECF 48-2.) Defendants argue Plaintiff lacks standing to assert this

claim because Plaintiff has failed to identify a concrete injury stemming from this alleged

violation. As stated above, claims pursuant to Section 1692e can be analogized to common law

claims of fraudulent misrepresentation. *Huber*, 84 F.4th at 148. The traditionally recognized harm

that provides a basis for fraudulent misrepresentation is a physical, monetary, or cognizable

intangible harm, such as a reputational or emotional harm that flows from the plaintiff's reliance

upon the misrepresentation. *Id.* Here, Plaintiff has not alleged that the reliance upon a

"misrepresentation" in Daniel Berger's voicemail caused him a physical, monetary, or otherwise

cognizable intangible harm. Because Plaintiff has not sufficiently alleged concrete injury in

connection with his Section 1692e(11) claim,[6] Plaintiff's claim is dismissed without prejudice for

---

[6] Plaintiff likewise purports to assert that the August 28, 2017 motion to strike in the State Court Action and a September 13, 2017 collection letter both violate Section 1692e(11). (Pl. Opp. at 32-33.) Plaintiff has not sufficiently alleged concrete injury in connection with these Section 1692e(11) claims, and Plaintiff's claims are dismissed without prejudice for lack of standing.

lack of standing.

      ii.      **Section 1692c**

Plaintiff brings two claims pursuant to Section 1692c. First, Plaintiff asserts that Defendant violated 15 U.S.C. § 1692c(a)(1)[7] of the FDCPA by communicating with Plaintiff at an unusual and/or inconvenient time. (SAC ¶ 60.) Courts have recognized that Section 1692(c)'s prohibitions against inconvenient communications "'are certainly aimed, at least in part, at guarding a consumer[']s privacy,' meaning an individual has standing to bring claims under 15 U.S.C. §1692c 'upon [an] intrusion-upon-seclusion theory of factual injury.'" *Marks v. Javitch Block LLC*, No. 23-431, 2024 U.S. Dist. LEXIS 36711, at *7 (E.D. Tex. Feb. 27, 2024) (quoting *Vazzano v. Receivable Mgmt. Servs. LLC*, No. 21-0825, 2022 U.S. Dist. LEXIS 217350, at *3 (N.D. Tex. Dec. 2, 2022)). The tort of intrusion upon seclusion occurs when a person intrudes upon the solitude or seclusion of another or his private affairs or concerns such that the intrusion would be highly offensive to a reasonable person. RESTATEMENT (SECOND) OF TORTS § 652B. To establish standing under *TransUnion*, a plaintiff must show some cognizable harm that flows from such an intrusion upon seclusion. *See Huber*, 84 F.4th at 149. Defendants argue that "[r]eceiving an email does not constitute a concrete injury." (DMSJ Br.  at 5.) Plaintiff contends that he was "disturbed" by Defendants' January 30, 2019 email sent after 9:00 p.m. (Omodunbi II Decl. ¶¶ 51-52.) This email was received in 2019, while Plaintiff feared arrest or deportation. (*See id.* ¶ 50.) Plaintiff's assertions that he felt disturbed and stressed are sufficient to establish cognizable injury. These alleged harms are traceable to the Defendants' conduct and may be redressed by this Court's

---

[7] 15 U.S.C. § 1692c(a)(1) provides, in relevant part, "Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location[.]"

decision. Therefore, Plaintiff has standing to assert his 15 U.S.C. § 1692c(a)(1) claim.

Second, Plaintiff alleges Defendants violated 15 U.S.C. § 1692c(a)(2)[8] by communicating with Plaintiff directly when they knew he was represented by an attorney. (SAC ¶ 61.) In connection with the State Court Action, Defendants directly served Plaintiff with motion papers. (DSMF ¶ 89.) When Plaintiff received copies of the March 7, 2017, March 21, 2017, April 24, 2017, and August 28, 2017 papers, he was represented by Lawrence Hersh, Esq. (PSMF ¶ 20.) Defendants argue that "mere service of motion papers during the State Court Action is not a concrete injury." (DMSJ Br. at 5.) Plaintiff's opposition and declaration do not allege any concrete harm experienced in connection with the service of these motion papers in 2017. (*See generally* Omodunbi II Decl.; PSMF.) Therefore, Plaintiff has failed to establish standing, and the Court dismisses Plaintiff's 15 U.S.C. § 1692c(a)(2) claim without prejudice.

### iii. Section 1692d

Plaintiff brings a claim pursuant to 15 U.S.C. § 1692d, which provides "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." The basis of Plaintiff's Section 1692d claim is the modification of the court-mandated post-judgment collection forms. (PMSJ Br. at 42.) Plaintiff has not put forth a common law analogue for his harm. However, parallels can be drawn between Section 1692d and the tort of intrusion upon seclusion.[9] The tort of intrusion upon seclusion occurs when a person intrudes upon the solitude or seclusion of another or his private affairs or concerns such that the intrusion would be highly offensive to a reasonable person.

---

[8] 15 U.S.C. § 1692c(a)(2) provides, in relevant part, "Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer[.]"

[9] *See Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 826 (5th Cir. 2022).

RESTATEMENT (SECOND) OF TORTS § 652B. To establish standing under *TransUnion*, a plaintiff must show some cognizable harm that flows from such an intrusion upon seclusion. *See Huber*, 84 F.4th at 149. However, as noted above, Plaintiff has not alleged any harm to himself in connection with these proposed additions to the proposed orders. Plaintiff therefore lacks standing to assert Section 1692d claims based on this conduct.

Furthermore, Plaintiff claims that Defendant Daniel Berger violated 15 U.S.C. § 1692d(6) by leaving Plaintiff a voicemail and not meaningfully identifying himself. (PMSJ Br. at 34-35.) 15 U.S.C. § 1692d(6) prohibits, "[e]xcept as provided in section 804 [15 U.S.C. § 1692b], the placement of telephone calls without meaningful disclosure of the caller's identity." Defendants assert that Plaintiff lacks standing to assert this claim because Plaintiff has failed to identify a concrete injury stemming from this alleged violation. (DMSJ Br. at 6.) The Court agrees. Plaintiff has not identified a "harm traditionally recognized at common law" that stems from this single phone call. *Dervitz*, 2024 U.S. App. LEXIS 6576, at *6; *TransUnion LLC*, 594 U.S. at 425-26. Because Plaintiff has failed to identify a concrete injury, he has not established standing, and the Court dismisses his Section 1692d(6) claim without prejudice.

### iv. Section 1692g

Plaintiff brings three claims pursuant to Section 1692g. First, Plaintiff asserts that Defendants violated 15 U.S.C. § 1692g(a)[10] by failing to properly give required notice relating to

---

[10] In the initial communication or within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector must provide: (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor. 15 U.S.C. § 1692g(a)(1)-(5).

the debt in the September 27, 2016 Letter. (SAC ¶ 71.) Second, Plaintiff asserts that Defendants likewise violated 15 U.S.C. § 1692g(b)[11] because the September 27, 2016 Letter overshadowed Plaintiff's rights to validate the debt under Section 1692g(a). (*Id.* ¶ 72.) Third, Plaintiff asserts the September 27, 2016 Letter failed to include the "collection costs" in the total amount due and therefore violated 15 U.S.C. § 1692g(a)(1). (PMSJ Br. at 12-14.) Regardless of whether the September 27, 2016 Letter complied with the requirements of Section 1692g, Defendants argue Plaintiff lacks standing to assert these claims because Plaintiff has not established concrete injury. On October 10, 2016, Plaintiff sent Defendants a letter disputing the validity of the debt amount and requesting proof of the amount claimed. (DSMF ¶ 34; PSMF ¶ 9.) Plaintiff spent approximately $1.00 in postage to send the letter. (Omodunbi Decl. II ¶ 7.) Federal courts, including those within the Third Circuit, have held that any monetary harm is sufficient to satisfy the concrete injury Article III standing requirement. *Church v. J. Ritter Law P.C.*, No. 23-1709, 2023 U.S. Dist. LEXIS 115232, at *7 (D.N.J. July 5, 2023) (finding $7.38 spent to send a letter to dispute a debt sufficient for purposes of establishing injury in fact); *In re Lincoln Nat'l COI Litig.*, 620 F. Supp. 3d 230, 264 (E.D. Pa. 2022) ("[A]ny monetary loss, however small, confers standing." (citing *Cottrell v. Alcon Lab'ys*, 874 F.3d 154, 163 (3d Cir. 2017)); *see also Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 756 (D. Haw. 2022) (holding that a payment of $13.70 in postal fees is a concrete harm); *Magruder v Cap. One, Nat'l Ass'n*, 540 F. Supp. 3d 1, 9 (D.D.C. 2021) (finding that the plaintiff incurred "out-of-pocket expenses" because of an FDCPA violation, thus suffering

---

[11] Section 1692g(b) states that if a debtor disputes the amount owed in writing, within 30 days of receiving notice, then the debt collector "shall cease collection of the debt . . . until the debt collector obtains verification of the debt[.]" 15 U.S.C. § 1692g(b). While Section 1692g does not explain what is required to verify a debt, district courts within the Third Circuit have held that "the requirements are minimal." *Campbell v. LVNV Funding, LLC*, No. 21-5388, 2022 U.S. Dist. LEXIS 183847, at *7 (E.D. Pa. Oct. 7, 2022); *Myers v. Midland Credit Management, Inc.*, No. 13-2455, 2014 U.S. Dist. LEXIS 32349, at *5 (M.D. Pa. Mar. 13, 2014) (finding that debt verification "involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt . . . There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.").

a concrete injury); *Van v. LLR, Inc.*, 962 F.3d 1160, 1162 (9th Cir. 2020) ("The district court erred by concluding that $3.76 is 'too little to support Article III standing.' For standing purposes, a loss of even a small amount of money is ordinarily an 'injury.'"). Plaintiff has therefore established a concrete harm. This alleged harm is traceable to the Defendants' conduct and may be redressed by this Court's decision. Therefore, Plaintiff has standing to assert his Section 1692g claims.

### v.   Section 1692f

Plaintiff asserts that Defendants violated 15 U.S.C. § 1692f(1)[12] by attempting to collect impermissible fees in the State Court Action. Defendants argue that Plaintiff lacks standing to assert this claim because he was not injured; the state court ultimately reduced the fee sought by Defendants.[13] (DMSJ Br. at 7-8; SAC, Ex. K.) Plaintiff has not identified a "harm traditionally recognized at common law" that stems from Defendants' attempts to secure fees in excess of what was ultimately awarded in the State Court Action.[14] *Dervitz*, 2024 U.S. App. LEXIS 6576, at *6; *TransUnion LLC*, 594 U.S. at 425-26. Because Plaintiff has failed to identify a concrete injury, he has not established standing, and the Court dismisses his Section 1692f(1) claim without prejudice.

---

[12] 15 U.S.C. § 1692f(1) provides " [a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . . the following conduct is a violation of this section: (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

[13] In her order granting summary judgment in the State Court Action in favor of Rutgers, the Honorable Mary J. Costello, J.S.C. wrote:

> The three (3) promissory notes clearly and unequivocally state that "In the event Rutgers, The State University refers this account to an attorney for collection, I agree to pay all collection costs." The plaintiff [Rutgers] attempted collection through their internal accounting office then resorted to an outside collection service. Finally, upon referral to an attorney, "collection costs" can only logically mean to include the professional fees of the attorney. This satisfies the rationale of *N.J. Higher Education Assistance Authority v. Martin*, 265 N.J. Super 564 (App. Div. 1993). However, N.J.A.C. 9A:10-6.16(b) limits the fee shifting to "up to 30 percent of the debt collected." As such, the total judgment amount has been amended as set forth above.

(ECF 173-6, Hersh Decl. Ex. 16.)

[14] The Court notes that requests for attorney fees are directed at the court, not the plaintiff. *Prashad v. Robert L Saldutti, LLC*, No. 22-00535, 2023 U.S. Dist. LEXIS 86283, at *10 (D.N.J. May 17, 2023). It is the court that possesses the discretion to award or not award fees and—if so—what amount. *Id.*

Defendants also argue that Plaintiff's 15 U.S.C. § 1692f claim must be dismissed because Plaintiff does not identify a specific incident that establishes this claim. (DMSJ Br. at 7.) Section 1692f "cannot be the basis for a separate claim for conduct that is already explicitly addressed by other sections of the FDCPA." *Bordeaux v. LTD Fin. Servs., L.P.*, No. 16-024, 2021 U.S. Dist. LEXIS 185401, at *17 (D.N.J. Sep. 28, 2021) (quoting *Corson v. Accounts Receivable Mgmt.*, No. 13-01903, 2013 U.S. Dist. LEXIS 112282, at *20 (D.N.J. Aug. 8, 2013)) "Courts have . . . routinely dismissed § 1692f claims when a plaintiff does not identify any misconduct beyond that which [he] assert[s] violate[s] other provisions of the FDCPA." *Corson*, 2013 U.S. Dist. LEXIS 112282, at *21 (quoting *Christy v. EOS CCA*, 905 F. Supp. 2d 648, 656 (E.D. Pa. 2012)) (alterations in original). Plaintiff bases his 1692f claims on the same conduct of Defendants that he alleges violated 1692d and 1692e. He fails to identify additional improper conduct. Therefore, the Court must grant summary judgment in favor of Defendants on Plaintiff's Section 1692f claim.

## B.     Fair Debt Collection Practices Act Claims

In the Third Circuit, FDCPA claims have four elements. *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022) (citing *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014)). The first three elements involve statutorily defined terms: (1) the plaintiff must be a "consumer,"[15] 15 U.S.C. § 1692a(3); (2) the defendant must be a "debt collector,"[16] *id.* § 1692a(6); and (3) the challenged practice must relate to the collection of a "debt," *id.* § 1692a(5).

---

[15] A consumer is "any natural person obligated or allegedly obligated to pay any debt." § 1692a(3).

[16] A debt collector is "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Creditors -- as opposed to 'debt collectors' -- generally are not subject to the FDCPA." *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). "The statute does not apply to persons or businesses collecting debts on their own behalf," *Staub v. Harris*, 626 F.2d 275, 277 (3d Cir. 1980), "[b]ecause creditors are generally presumed to restrain their abusive collection practices out of a desire to protect their corporate goodwill," *Pollice*, 225 F.3d at 403. Instead, "[the FDCPA] is directed to those persons who are engaged in business for the principal purpose of collecting debts." *Id.*

*Lutz*, 49 F.4th at 328. The fourth element requires the defendant to have violated the FDCPA in attempting to collect the debt. *Id.*

The parties do not dispute that under the statute, Plaintiff is a consumer, Defendants act as debt collectors, or that Defendants were attempting to collect a debt from Plaintiff. Thus, the first three elements of a FDCPA cause of action are satisfied. The critical question is whether Defendants violated a provision of the FDCPA in attempting to collect the debt owed to Rutgers.

### a.   Claims Related to the September 27, 2016 Letter

Defendants' September 27, 2016 Letter to Plaintiff was its first communication with Plaintiff. The letter stated that the "TOTAL DUE ON BOTH ACCOUNTS [is] $14,075.40[.]" (ECF 172-3, Ex 1B.) The letter also states: "Please be advised that if suit is instituted, you may incur charges in addition to what you owe on the above referenced account." (*Id.*) Plaintiff brings several claims in connection with the September 27, 2016 Letter.

### i.   Section 1692g(a)

Plaintiff asserts that Defendants violated 15 U.S.C. § 1692g(a) by failing to properly give required notice relating to the debt in the September 27, 2016 Letter. (SAC ¶ 71; DMSJ Br. at 42; Pl. Opp. at 39.) That section provides that in the initial communication or within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector must provide:

> (1) the amount of the debt;
>
> (2) the name of the creditor to whom the debt is owed;
>
> (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the

debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

15 U.S.C. § 1692g(a)(1)-(5).

Plaintiff claims the September 27, 2016 Letter consisted of one single page. (PSMF ¶ 6.) Defendants assert that attached to the September 27, 2016 Letter was a second page entitled "Important Notice" that indicated Plaintiff had the right to dispute the validity of the debt or any portion thereof, and that upon written request, verification of the debt would be sent to Plaintiff. (DSMF ¶ 29.) Plaintiff contests that the September 27, 2016 Letter did not include this second page, and instead asserts that the Letter failed to provide disclosures required by the FDCPA or notice that would have informed Plaintiff of his right to dispute the debt or seek validation of the debt. (PSMF ¶¶ 6, 8; Omodunbi Decl. ¶ 7.) The Court finds a genuine issue of material fact regarding whether Defendants' initial letter to Plaintiff included the requisite statements, precluding summary judgment on plaintiff's Section 1692g(a) claim. *See Estate of Caruso v. Fin. Recoveries*, No. 15-7936, 2017 U.S. Dist. LEXIS 96168, at *18 (D.N.J. June 22, 2017).

### ii.     Section 1692g(b)

Plaintiff asserts in the alternative to his Section 1692(a) claim that if the September 27, 2016 Letter included the second page, then Defendants violated Section 1692g(b)[17] because the

---

[17] Section 1692g(b) states that if a debtor disputes the amount owed in writing, within 30 days of receiving notice, then the debt collector "shall cease collection of the debt . . . until the debt collector obtains verification of the debt[.]" 15 U.S.C. § 1692g(b). While Section 1692g does not explain what is required to verify a debt, district courts within the Third Circuit have held that "the requirements are minimal." *Campbell v. LVNV Funding, LLC*, No. 21-5388, 2022 U.S. Dist. LEXIS 183847, at *7 (E.D. Pa. Oct. 7, 2022); *Myers v. Midland Credit Management, Inc.*, No. 13-2455, 2014 U.S. Dist. LEXIS 32349, at *5 (M.D. Pa. Mar. 13, 2014) (finding that debt verification "involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt . . . There is no concomitant obligation to forward copies of bills or other detailed evidence of the debt.").

September 27, 2016 Letter overshadowed Plaintiff's rights to validate the debt under Section 1692g(a). (SAC ¶ 72; PMSJ Br. at 19.) The resolution of this claim depends on the resolution of the factual issue at the heart of Plaintiff's Section 1692g(a) claim: whether the September 27, 2016 Letter included a second page. Therefore, the Court finds a genuine issue of material fact precluding summary judgment on plaintiff's claim under 15 U.S.C. § 1692g(b).

### iii.    Section 1692g(a)(1)

The September 27, 2016 Letter provided the total amount due to Rutgers was $14,075.40. (DSMF ¶¶ 27-28; PSMF ¶¶ 6-7.) Plaintiff asserts the September 27, 2016 Letter failed to include the "collection costs" in the total amount due and therefore violated 15 U.S.C. § 1692g(a)(1). (PMSJ Br. at 12-14.) Plaintiff explains that "the operative event obligating Plaintiff in the payment of "collection costs", and thus attorney's fees, was Rutgers' referral of Plaintiff's account to an attorney, who in this case is Defendant law firm Gordin & Berger." (*Id.* at 14.) Therefore, according to Plaintiff, once Defendant Gordin & Berger sent out the September 27, 2016 collection letter, Plaintiff was already obligated to pay "collection costs." (*Id.*)

Defendants contest that "the total amount in the September 27, 2016 letter captured late fees, charges, and interest that were due and owing by the Plaintiff when placed with Defendants." (Defs. Opp. at 14.) Indeed, this $14,075.40 amount was confirmed in the State Court Action. (ECF 173-6, Hersh Decl. Ex. 16.) "Defendants only sought fees on behalf of its client when their complaint was amended and the lawsuit was transferred. . . . Rutgers decided to include a demand for collection costs and attorney's fees only after initiation of the State Court Action." (Defs. Opp. at 14.) The Court agrees that the Defendants' contingency fees, which were found to be "collection costs" in the State Court Action, had not accrued when the September 27, 2016 Letter was sent

because Defendants had yet to recover the debt from Plaintiff.[18] The Defendants' contingency fees were contingent upon recovery of the balance owed by Plaintiff, and were not owed when the September 27, 2016 Letter was sent. Therefore, the Court grants summary judgment in Defendants' favor on Plaintiff's 15 U.S.C. § 1692g(a)(1) claim.

### iv.    Section 1692e[19]

Plaintiff also asserts that the September 27, 2016 Letter violated 1692e because it "include[d] additional language suggesting that Plaintiff would only incur charges in addition to the $14,075.40 total due amount if a lawsuit was filed against him. However, this language was false, misleading and deceptive since, since additional charges in the form of 'collection costs' had already accrued[.]" (PMSJ Br. at 4.)

Section 1692e prohibits a debt collector from using any false, deceptive, or misleading representations or means in connection with collecting a debt. 15 U.S.C. § 1692e. Here, the question is how the least sophisticated debtor, not the individual Plaintiff, would view the allegedly false, deceptive, or misleading statements. *Jensen v. Pressler & Pressler*, 791 F.3d 413, 420 (3d Cir. 2015). The Third Circuit has reasoned that the FDCPA's purpose of protecting consumers "is best served by a definition of 'deceive' that looks to the tendency of language to mislead the least sophisticated recipients of a debt collector's [communications]." *Id.* (alteration in original). Thus,

---

[18] In fact, courts have found that debt collectors may violate the FDCPA when they include contingency fees in debt collection letters before such fees are earned. *See e.g.*, *Hernandez v. Miracle Fin., Inc.*, No. 11-4074, 2011 U.S. Dist. LEXIS 144356, at *10 (D.N.J. Dec. 13, 2011); *Gathuru v. Credit Control Servs.*, 623 F. Supp. 2d 113, 121-22 (D. Mass. 2009) (granting summary judgment in favor of plaintiff and finding that collection notice falsely represented amount due where defendant attempted to collect a contingent fee not yet due).

[19] Plaintiff also asserts that "the September 27 collection letter failed to itemize late fees, interest, penalties, collection costs and attorney's fees as required by sections 1692e." (PMSJ at 19.) However, "nothing in the statutory text requires a debt collector to itemize the debt being collected[.]" *Velez-Aguilar v. Sequium Asset Sols. LLC Inc*., No. 22-1109, 2023 U.S. App. LEXIS 2943, at *6 (3d Cir. Feb. 7, 2023); *Fike v. Portfolio Recovery Assocs., LLC*, No. 19-144, 2020 U.S. Dist. LEXIS 176452, at *4 (W.D. Pa. Sep. 25, 2020). Therefore, the Court grants summary judgment in favor of Defendants on Plaintiff's 15 U.S.C. § 1692e claim based on this assertion.

the Third Circuit has held that a debt collector "is responsible for its [communication's] content and for what the least sophisticated debtor would have understood from it." *McLaughlin v. Phelan Hallinan & Schmieg*, LLP, 756 F.3d 240, 246 (3d Cir. 2014) (alteration in original). A communication will be found deceptive if, under the least sophisticated debtor standard, the communication "can be reasonably read to have two different meanings, one of which is inaccurate." *Jensen*, 791 F.3d at 420. Further, "[w]hile it is impossible to know whether a statement is misleading or deceptive without reference to the person being misled or deceived—here, the least sophisticated debtor—the same is not true of falsity; a statement is either true or false." *Id.* Nevertheless, any allegedly false or misleading statements are only actionable if they are material. *Id.* at 421 (holding that "a statement in a communication is material if it is capable of influencing the decision of the least sophisticated debtor"). Moreover, a debt collection communication should be considered in context, meaning within the context of the communication as a whole. *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 430 (3d Cir. 2018) (holding that any debt collection letters "when read in their entirety, must not deceive or mislead the least-sophisticated debtor"); *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 149 (3d Cir. 2013) (finding that "even the 'least sophisticated debtor' is expected to read any notice in its entirety").

As stated above, collection costs (Defendants' contingency fees) had not accrued when the September 27, 2016 Letter was sent because Defendants had yet to recover the debt from Plaintiff. The September 27, 2016 Letter itself states "that if suit is instituted, you may incur charges in addition to what you owe on the above referenced account." (ECF 172-3, Ex 1B.) Several courts within this district have found that similar language, when accompanying a listed amount due, does not violate Section 1629e when viewed through the perspective of the least sophisticated debtor. *See, e.g.*, *Rock v. Greenspoon Marder, LLP*, No. 20-3522, 2021 U.S. Dist. LEXIS 14097,

at *19 (D.N.J. Jan. 26, 2021) ("as the date of this letter, the total amount of the debt that you owe is $128,655.61. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater."); *Thompson v. Alltran Fin.*, No. 19-6618, 2020 U.S. Dist. LEXIS 58897, at *24 (D.N.J. Mar. 31, 2020). Therefore, the Court grants summary judgment in favor of Defendants on Plaintiff's 15 U.S.C. § 1692e claim.

### b. Claim Related to the January 20, 2017 Email

#### i. Section 1692e(5)

Plaintiff asserts that Defendant Edward Berger's January 20, 2017 email was a false threat in violation of Section 1692e(5). (PMSJ Br. at 21-22.) Section 1692e(5) provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" including a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). This claim, like other 1692e claims, must be analyzed from the perspective of the least sophisticated debtor. *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 824 (D.N.J. 2018).

The January 20, 2017 email states: "As I have not received the initial $300.00 installment, I will be proceeding to enter judgment against you." (*See* ECF 172-3, Affidavit of Edward L. Berger Ex. 1G.) Plaintiff argues this was a "false threat" to enter default judgment because Defendants could not legally seek default judgment at the time Defendant Edward Berger sent the email. (PSMJ Br. at 21.) Plaintiff states that the original summons and complaint were filed in the Special Civil Part on December 23, 2016, and Plaintiff's answer was due February 1, 2017. (*Id.* at 22; Hersh Decl, Ex. 5). Plaintiff claims that at the time Defendant Edward Berger sent him the email on January 20, 2017, Plaintiff still had 12 days to file an answer. (PMSJ Br. at 22.) "Since Plaintiff was not in default and still had time to file an answer at the time that Defendant Edward

Berger sent the January 20 threatening email, Defendants' imminent threat to enter judgment against Plaintiff was false." (*Id.*) Plaintiff states that Defendants never moved for default judgment as threatened. He concludes the January 27 email violated Section 1692e(5) based upon Defendants' false threat of judgment, since Defendants' could not legally move for judgment at the time the email was sent.

In their opposition, Defendants argue that the context of the January 20, 2017 email "cannot be ignored." (Defs. Opp. at 23.) "Plaintiff's argument that these words constituted a threat to take action relies on a 'bizarre and idiosyncratic' interpretation of the phrase 'proceeding to enter judgment.'" (*Id.*) Defendants further argue that "it cannot be said the Defendants did not intend to "proceed to enter judgment" as they ultimately did receive summary judgment in their client's favor." (*Id.*) In their own motion for summary judgment, Defendants argue that the email does not state that Defendants will "enter judgment" or "enter default judgment," but instead states that Defendants "will be proceeding to enter judgment." (DMSJ Br. at 27.) Instead, Defendants assert that "[i]nitiation and prosecution of an action is precisely the means of proceeding to enter judgment as it is the goal of any litigation to achieve a judgment in favor of a client." (*Id.*)

Based on the foregoing, genuine issues of material fact exist as to what Defendant Edward Berger meant by "will be proceeding to enter judgment against you" and whether that statement was a threat to take any action that cannot legally be taken or that is not intended to be taken pursuant to Section 1692e(5). "A debt[] collector violates [S]ection 1692(e)(5) where it asserts it could take legal action 'it had no intention of taking and has never or very rarely taken before.'" *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 825 (D.N.J. 2018) (quoting *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 455 (3d Cir. 2006)). Whether the January 20, 2017 email could reasonably be perceived as a "threat to take legal action" using the "least

sophisticated standard" under the circumstances of this case is best left to jury determination. *See Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 824 (D.N.J. 2018) (citing *Ideal Dairy Farms v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996) ("Summary judgment may not be granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed.")). Therefore, the Court denies summary judgment on Plaintiff's Section 1692e(5) claim in connection with the January 20, 2017 email.

### c. Claims Related to the January 23, 2019 Email

### i. Section 1692e(5)

Plaintiff also asserts that the January 23, 2019 email from Defendant Daniel Berger violated Section 1692e(5) because it was a false threat or misrepresentation that Defendants would seek to have Plaintiff arrested. (PMSJ Br. at 29-30.) Section 1692e(5) provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt" including a "threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). This claim, like other 1692e claims, must be analyzed from the perspective of the least sophisticated debtor. *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 824 (D.N.J. 2018).

The January 23, 2019 email from Defendant Daniel Berger states:

> You are being contacted directly pursuant to the permission from your attorney and court authorization. Attached hereto is the Information Subpoena and Questions that were served on you through your attorney on October 24, 2018. Also attached hereto is the Order granting the motion to enforce litigant's rights. Pursuant to court rules and the attached order, you have been compelled to furnish appropriate answers to the Information Subpoena.
>
> As you have not responded within ten (10) days from the date of the order, we are now authorized by law to apply to the court for a warrant for your arrest. However, since it is unclear to us at this time whether or not your attorney, in fact, provided you with all of the above paperwork, as a courtesy, we will refrain from moving

> forward with our application for an arrest warrant if we are in receipt
> of your certified answers prior to the end of the month.
>         Please give this matter your prompt attention.

(ECF 172-24, Ex. 15.) Plaintiff asserts that "the January 23 email makes clear that if Plaintiff did not provide responses to the information subpoena by the end of the month, which was eight days later, Defendants would move forward with an application for Plaintiff's arrest." (PMSJ Br. at 30.) Plaintiff did not respond to the information subpoena by the end of the ten-day period. (*Id.*) Defendants did not move forward with an application for an arrest warrant. (*Id.*) Plaintiff asserts that because Defendants did not move forward with the application and Plaintiff was never arrested, Defendants never intended to follow through with their threat to arrest Plaintiff. (*Id.*)

In their opposition, Defendants assert that they were legally authorized to seek Plaintiff's arrest. (Defs. Opp. at 27-28.) On January 11, 2019, the Honorable Mary J. Costello issued an order that provided, in relevant part, that if Plaintiff failed to comply with the Information Subpoena within ten days, "a warrant for [Plaintiff's] arrest may issue out of this Court without further notice." (ECF 175-26, Ex. 19.) Then, on January 23, 2019, Judge Costello issued an amended order stating the same, but removing the language from the order that Plaintiff's own attorney violated Plaintiff's rights as a litigant. (ECF 175-26, Ex. 20.)  Pursuant to the January 23, 2019 amended order, Plaintiff would need to respond within "ten (10) days of the certified date of personal service or mailing this order." (*Id.*) Later on January 23, 2019, Defendants sent the above-quoted email stating "[a]s you have not responded within ten (10) days from the date of the order, we are now authorized by law to apply to the court for a warrant for your arrest. . . . as a courtesy, we will refrain from moving forward with our application for an arrest warrant if we are in receipt of your certified answers prior to the end of the month." (ECF 172-24, Ex. 15.)

Plaintiff argues that "Defendants' threat in the January 23, 2019 email to move forward

with an application for an arrest warrant after only eight days was contrary to the state court order since the state court gave Defendants ten days to provide answers." (PMSJ Reply at 14.) The Court agrees. The Defendants were authorized to seek a warrant for Plaintiff's arrest ten days after "the certified date of personal service or mailing [the] order." (ECF 175-26, Ex. 20.) Defendants clearly state in the email that they would seek Plaintiff's arrest at the end of January 2019, which is before the close of the ten-day period provided for in Judge Costello's order. Therefore, the Court must grant summary judgment on Plaintiff 1692e(5) claim in connection with the January 23, 2019 email in Plaintiff's favor.

### d. Claims Related to the January 31, 2019 Email

#### i. Section 1692c(a)(1)

Plaintiff asserts that Defendants violated Section 1692c(a)(1) by contacting Plaintiff at an unusual or inconvenient time. (SAC ¶ 60.) On January 31, 2019 at approximately 9:06 p.m., Defendant Daniel Berger emailed Plaintiff in response to a message Plaintiff sent at 7:52 p.m. (DSMF ¶ 131; PSMF ¶ 39.)[20] Defendant Daniel Berger's email states:

> Attached is the writ of execution that was issued on December 19, 2018 reflecting the remaining judgment amount as of that date. That does not include any costs or interest that has been incurred or accrued since then.
> At this time Rutgers agrees that we should find out what financial position you are in before we make any offers, however, if you have an offer you would like me to pass along I would have to pass along the same to them in accordance with the rules of professional conduct.

(DSMF ¶ 131; PSMF ¶ 39.)

Section 1692c(a)(1) provides, in relevant part:

> Without the prior consent of the consumer given directly to the debt

---

[20] While Defendants' copy of the email as sent from Defendant Daniel Berger's account states that it was sent at 9:06 p.m., Plaintiff's copy of the email as received by Plaintiff states it was received at 9:07 p.m. This difference is not material because both copies of the email demonstrate that it was sent and received after 9:00 p.m.

> collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt . . . at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location[.]

15 U.S.C. § 1692c(a)(1). Defendants argue they did not violate Section 1692c(a)(1) because "Plaintiff invited the response, that it was sent shortly after Plaintiff sent Defendants an email requesting certain information, and, it was delivered in a technological manner (developed well after the FDCPA was enacted) that would allow the Plaintiff to review it at a time that was convenient for him." (Def. MSJ at 9.) As this Court noted in a prior opinion, "Defendants concede[d] that Daniel Berger emailed Plaintiff at a presumptively inconvenient time[.]" (ECF 107 at 12.) In that same opinion, this Court explained that "the plain text of § 1692a(2) indicates that a 'communication' can be made 'through any medium[,]'" including an email. (*Id.* at 13.) There is no dispute that Defendant Daniel Berger contacted Plaintiff after 9:00 p.m., and Defendants have not asserted or shown that Plaintiff consented to communications after 9:00 p.m. Therefore, the Court grants summary judgment on Section 1692c(a)(1) claim in Plaintiff's favor.

### e. Section 1692e(10) Claim

Defendant moves for summary judgment on Plaintiff's Section 1692e(10) claim. Section 1692e(10) "is a catchall-type provision prohibiting" the use of any false representation or deceptive means to collect a debt. *Pollak v. Portfolio Recovery Assocs., LLC*, 285 F. Supp. 3d 812, 833 (D.N.J. 2018) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 224 (3d Cir. 2008)). However, Plaintiff does not identify what facts form the basis of his Section 1692e(10) claim. (*See generally* PMSJ Br.; Pl. Opp.; Pl. Reply.) "A nonmoving party must point to concrete evidence in the record which supports each essential element of its case." *Black Car Assistance Corp. v. New Jersey*, 351

F. Supp. 2d 284, 286 (D.N.J. 2004) "If the party fails to provide such evidence, then it is not entitled to a trial and the moving party is entitled to summary judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(e)). Therefore, the Court must grant summary judgment in favor of Defendants on Plaintiff's Section 1692e(10) claim.

## IV. CONCLUSION

For the reasons stated above, Defendants' motion for summary judgment (ECF 205) is **GRANTED in part** and **DENIED in part** and Plaintiff's cross-motion for summary judgment (ECF 207) is **GRANTED in part** and **DENIED in part**. An appropriate order follows.


*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:      Jessica S. Allen, U.S.M.J.
          Parties